UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**JUANDA K. ADAMS,**

    Plaintiff,

v.                                                                               Case No: 5:13-cv-22-Oc-18PRL

**COMMISSIONER OF SOCIAL**
**SECURITY**

    Defendant.

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Supplemental Security Income ("SSI"). The Court has reviewed the record, the memoranda, and the applicable law. For the reasons set forth herein, the Commissioner's decision should be **AFFIRMED**.

### I. Procedural History and Summary of the ALJ's Decision

In February 2010, Plaintiff filed an application for SSI, alleging a disability onset date of February 18, 2004. (Tr. at 166). The Social Security Administration denied this application initially and upon reconsideration. (*Id.* at 66, 71). Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 92, 134). On June 13, 2012, the ALJ found Plaintiff not disabled. (*Id.* at 31).

In a written decision, the ALJ made the following findings. (Tr. at 22-31). At step one, Plaintiff had not engaged in substantial gainful activity since February 3, 2010, the application

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

date. (*Id.* at 24). At step two, Plaintiff had the severe impairments of mild degenerative disc disease, chronic pain syndrome, and a history of migraines. (*Id.*). Plaintiff also had the non-severe impairment of affective disorder. (*Id.*). At step three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 26). Plaintiff had the residual functional capacity ("RFC") to perform light work with occasional bending, stooping, balancing, crouching, and crawling. (*Id.*). At step four, Plaintiff was unable to perform her past relevant work. (*Id.* at 30). At step five, considering Plaintiff's age, education, work experience, and RFC, there were jobs that Plaintiff could perform that existed in significant numbers in the national economy. (*Id.*). The ALJ explained that, if Plaintiff could perform the full range of light work, considering her age, education, and work experience, Medical-Vocational Rule 202.21 would direct a finding of not disabled. (*Id.*). Here, Plaintiff's additional limitations had little or no effect on the occupational base of unskilled light work. Therefore, the ALJ found Plaintiff not disabled in accordance with Medical-Vocational Rule 202.21. (*Id.*).

The Appeals Council denied review on November 27, 2012. (Tr. at 2). Plaintiff filed a complaint in this Court on January 14, 2013. (Doc. 1).

## II. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected either to result in death or to last for a continuous period of not fewer than 12 months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R.

§ 404.1520. The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (*citing Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### III. Relevant Evidence and Arguments on Appeal

Plaintiff was born August 2, 1960, and she has a high school education. (Tr. at 42). Plaintiff testified that, in 2004, she was in a car accident. (*Id.* at 51). After the accident, she was fired from her job at the post office because she could no longer perform the work. (*Id.* at 51-52).

Plaintiff testified that she had pain and numbness in her right arm and that she was unable to lift that arm. (*Id.* at 42-43). She also had neck pain, back pain, and herniated discs in her back. (*Id.* at 43-44). Plaintiff also had blurry vision, she could not tolerate sunlight, and sunlight caused her to have migraines. (*Id.* at 47). She had migraines approximately every other day, though the pain never really went away. (*Id.* at 47-48).

On appeal, Plaintiff first argues that the ALJ erred by failing to include any limitations related to Plaintiff's history of migraines in the RFC. (Doc. 13 at 10-12). Because migraines cause non-exertional limitations, Plaintiff asserts that the ALJ should have relied on the testimony of a vocational expert ("VE") rather than on the Medical-Vocational Rules. (*Id.* at 12). Second, Plaintiff argues that the ALJ erroneously failed to state the weight given to a number of medical opinions, including: (1) opinions related to Plaintiff's vision problems; (2) Dr. Saba's opinion; and (3) Dr. Kurl's opinion. (*Id.* at 13-17).

### IV. Analysis

#### A. *Limitations Related to Plaintiff's Migraines*

Plaintiff argues that the ALJ erred by failing to include any limitations related to her history of migraines in the RFC. (Doc. 13 at 10-12). In support of this argument, she references treatment records from Dr. Saba, Dr. Marchand, Dr. Vesser, and Total Health Clinic. (*Id.* at 11). Plaintiff further argues that, because migraines cause non-exertional impairments such as nausea, vomiting, photophobia, and phonophobia, the ALJ erred in relying on the Medical-Vocational Rules to find her not disabled. (*Id.* at 12). Rather, according to Plaintiff, the ALJ should have relied on the testimony of a VE. (*Id.*).

A claimant may attempt to establish disability through "testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In such a case,

the court applies a three part test, which "requires (1) evidence of an underlying medical condition and either (2) objective medical evidence" confirming the severity of the alleged symptoms arising from the condition or "(3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* The ALJ may discredit such testimony so long as he provides "explicit and adequate reasons for doing so." *Id.*

A claimant's RFC is that which she "is still able to do despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). An ALJ need not include limitations that he finds not supported by the medical evidence in the RFC. *Stone v. Comm'r of Soc. Sec.*, No. 13-12012, 2013 WL 6017393, at *3 (11th Cir. Nov. 14, 2013); *cf. Vesy v. Astrue*, 353 F. App'x 219, 223 (11th Cir. 2009) (concluding that it was not erroneous not to include in the RFC limitations regarding pain, fatigue, and stiffness because the claimant's doctor concluded that these limitations did not affect the claimant's ability to perform light work). Similarly, an ALJ need not include limitations controlled by medication in the RFC. *King v. Comm'r, Soc. Sec. Admin.*, No. 13-11719, 2013 WL 6671236, at *2 (11th Cir. Dec. 19, 2013); *see also Vesy*, 353 F. App'x at 223 (concluding that it was not erroneous not to include in the RFC the alleged non-exertional impairments of diarrhea and vomiting where the claimant's irritable bowel syndrome was controlled by medication).

At step five of the sequential evaluation process, the ALJ considers "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The ALJ may base his conclusion at step five on the Medical Vocational Guidelines ("grids") or on the testimony of a VE. *Phillips*, 357 F.3d at 1239-40. The ALJ may not rely on the grids "'when a claimant has non-exertional impairments that significantly

limit basic work skills.'"  *Id.* at 1242 (*quoting Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)).  Impairments significantly limit basic work skills if they "prohibit a claimant from performing 'a *wide* range' of work at a given work level."  *Id.* at 1243 (*quoting Foote*, 67 F.3d at 1559).  Non-exertional limitations are those that "affect only [the claimant's] ability to meet the demands of jobs other than the strength demands."  20 C.F.R. § 416.969a(c)(1).  Examples of non-exertional limitations include pain or difficulty seeing.  *Id.*

The ALJ's failure to include limitations related to Plaintiff's history of migraines in the RFC was not erroneous.  The ALJ noted Plaintiff's testimony regarding her migraines, including problems with blurred vision, an inability to see normally, and problems with sunlight, but found that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with the RFC.  (*See* Tr. at 27-28).  The ALJ was not required to include in the RFC Plaintiff's subjective complaints after determining that such complaints were not supported by the record.  *See Stone*, 2013 WL 6017393, at *3.  Moreover, the ALJ's credibility finding—based on the conservative care that Plaintiff received as well as the fact that her migraines were controlled with medication—was supported by substantial evidence.  Plaintiff reported to Dr. Saba that her headaches responded to Zomig, and she later reported that Elavil was very helpful for her migraines.  (*Id.* at 396, 401).  Similarly, in April 2010, Dr. Marchand prescribed a refill of Maxalt for Plaintiff's migraines, noting that the medication had been effective in the past.  (*Id.* at 493-94).

The medical evidence that Plaintiff cites on appeal is unavailing.  First, Plaintiff cites Dr. Saba's notations that Plaintiff had migraines with throbbing, nausea, photophobia, and phonophobia.  (Doc. 13 at 11).  The ALJ did not err in not including these symptoms in the RFC because Plaintiff reported to Dr. Saba in 2005 that her headaches responded to the medication

Zomig, and in 2008, she reported to Dr. Saba that the medication Elavil—which had been prescribed to prevent migraines—was extremely helpful. *See King*, 2013 WL 6671236, at *2; (Tr. at 396, 399, 401). Plaintiff also cites Dr. Saba's opinion that migraines contributed to her impairment rating. (Doc. 13 at 11). The ALJ was not required to include limitations related to migraines in the RFC because, despite the opinion that Plaintiff's migraines contributed to her impairment rating, Dr. Saba also opined that she could perform light work. *See Vesy*, 353 F. App'x at 223; (Tr. at 402). Further, there is no indication that the additional limitations that Dr. Saba recommended—such as limiting activities including climbing and not being exposed to continuous cold or heat—were intended to address Plaintiff's migraines. (*See* Tr. at 402).

Second, Plaintiff cites Dr. Marchand's note that Plaintiff complained of migraines with nausea and vomiting. (Doc. 13 at 11). This notation was made at Plaintiff's April 21, 2010, appointment, at which Dr. Marchand also noted that Plaintiff had run out of Maxalt, which she had taken in the past for migraines. (Tr. at 493). Dr. Marchand prescribed a refill of Maxalt at that visit, noting that the medication had been effective in the past. (*Id.* at 494). Because Plaintiff's migraines responded to medication, including Maxalt, the ALJ did not err in not including limitations caused by migraines in the RFC. *See King*, 2013 WL 6671236, at *2.

Third, Plaintiff cites Dr. Vesser's opinion that photophobia[2] from migraines limited Plaintiff's vision. (Doc. 13 at 11). However, the ALJ noted and rejected Plaintiff's subjective complaints—which included difficulty with sunlight—and as discussed above, that credibility finding was supported by substantial evidence. The ALJ was not required to include in the RFC subjective complaints not supported by the record. *See Stone*, 2013 WL 6017393, at *3.

Fourth, Plaintiff cites a note from Total Health Clinic indicating that she had severe

---

[2] Photophobia is an intolerance, painful sensitivity, or fear or light.

headaches and a diagnosis of photophobia.  (Doc. 13 at 11).  As discussed above, the medical evidence shows that Plaintiff's headaches were controlled by medication, (Tr. at 396, 399, 401, 479), and there was no need for the ALJ to include limitations controlled by medication in the RFC, *see King*, 2013 WL 6671236, at *2.  As to the diagnosis of photophobia, the records from Total Health Clinic do include an assessment of photophobia on February 26, 2004.   (Tr. at 389).  However, a physician from Total Health Clinic noted in April 2004 that Plaintiff was able to return to work and other activities with no restrictions.  (*Id.* at 344).   Moreover, there is no indication that a physician at Total Health Clinic assessed the severity of Plaintiff's photophobia or provided any treatment for the photophobia.  (*See generally id.* at 332-75, 380-89).   The ALJ was not required to include limitations related to photophobia where the physician indicated that Plaintiff could return to work and other activities with no restrictions.   See *Vesy*, 353 F. App'x at 223.

Finally, because the ALJ properly did not include non-exertional limitations in Plaintiff's RFC, there was no error in relying on the grids rather than utilizing the testimony of a VE.  *See Phillips*, 357 F.3d at 1242.

## B. Vision Limitations

Plaintiff argues that the ALJ erroneously failed to specify the weight given to the opinions of the state consultants, Dr. Vesser, Dr. Kurl, and Dr. Saba that Plaintiff had limited or blurred vision.  (Doc. 13 at 13-14).   Further, the ALJ did not include vision limitations in his findings.  (*Id.* at 14).   Plaintiff notes that vision limitations could affect her ability to work.   (*Id.*).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel*, 631 F.3d at 1179.   Such a statement is necessary to allow the "reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (*quoting Cowart v. Schweiker*, 662 F.2d 731, 735

- 9 -

(11th Cir. 1981)).  However, the ALJ need not "specifically refer to every piece of evidence in his decision."  *Dyer*, 395 F.3d at 1211.

Here, the ALJ's discussion of Plaintiff's subjective symptoms and discussion of the medical opinions are sufficiently specific and detailed to allow the Court to determine whether the ALJ's decision is supported by substantial evidence.  *See Winschel*, 631 F.3d at 1179.  The ALJ specified that he was giving great weight to the opinions of the state agency consultants and Dr. Saba, while giving little weight to the opinions of Dr. Vesser and Dr. Kurl.  (Tr. at 29).  The ALJ was not required to refer specifically to each of the doctors' findings in making these determinations, particularly in light of the ALJ's finding that Plaintiff's allegations regarding her subjective symptoms—including difficulties with vision—were not fully credible.  *See Dyer*, 395 F.3d at 1211; *Holt*, 921 F.2d at 1223.  Specifically, as discussed above, the ALJ explained that Plaintiff's migraines were controlled by medication, which is supported by Dr. Saba's and Dr. Marchand's treatment records.  (*See* Tr. at 396, 401, 493-94).  Because the ALJ found that Plaintiff's alleged vision limitations were not supported by the record due to Plaintiff's migraines being controlled by medication, the ALJ was not required to include such limitations in the RFC.  *See King*, 2013 WL 6671236, at *2.  Accordingly, the ALJ sufficiently discussed the opinions of the state agency consultants, Dr. Saba, Dr. Vesser, and Dr. Kurl as those opinions related to Plaintiff's vision.

### C. Dr. Saba's Opinion

Next, Plaintiff argues that the ALJ did not specify the weight given to the opinion of Dr. Saba, a treating physician.  (Doc. 13 at 14).  Nor did the ALJ include in his findings Dr. Saba's opinions that Plaintiff could only lift five pounds, could only reach overhead infrequently, and would need five minute breaks between sitting and standing.  (*Id.* at 14-15).

First, although the ALJ did not identify Dr. Saba by name in the paragraph assigning weight to various medical opinions, the ALJ did specify the weight given to Dr. Saba's opinion. (*See* Tr. at 29). The ALJ noted that Plaintiff's neurologist, whose records are found at Exhibit B4F, restricted Plaintiff to work within the light exertional range in 2005. (*Id.*). Dr. Saba's records are found at Exhibit B4F, and it was Dr. Saba's 2005 opinion to which the ALJ was referring. (*See id.* at 29, 402). The ALJ noted that this opinion was consistent with the opinions of the state agency consultants and the opinion of Dr. Lee, and the ALJ gave these opinions "great weight in total." (*Id.* at 29). Thus, Plaintiff's argument that the ALJ did not specify the weight given to Dr. Saba's opinion is belied by the record.

Next, Plaintiff is also incorrect that the ALJ did not incorporate Dr. Saba's lifting restriction into the RFC. Dr. Saba opined that Plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds, and constantly lift 5 pounds. (Tr. at 402). This opinion is consistent with the ALJ's finding that Plaintiff could perform light work, which involves lifting up to 20 pounds and frequently lifting up to 10 pounds. 20 C.F.R. § 416.967(b).

The ALJ did not err in not including in the RFC Dr. Saba's opinion that Plaintiff should not engage in frequent overhead reaching or his recommendation that she take short breaks after every 45 minutes of continuous standing or sitting. The ALJ is not required to include in the RFC limitations not supported by the record, and here, the ALJ found that limitations beyond the RFC were inconsistent with the record. *See Stone*, 2013 WL 6017393, at *3; (Tr. at 28). The ALJ's finding that additional limitations were not warranted given the conservative treatment and lack of positive examination findings is supported by substantial evidence. For example, a physician at Total Health Clinic, where Plaintiff underwent physical therapy after her 2004 car accident, indicated on April 9, 2004, that Plaintiff could return to work and other activities with no

limitations. (Tr. at 344). Dr. Lee performed a consultative examination in April 2010 and reported that, although Plaintiff had some decreased range of motion in her back, neck, and shoulders, she also had no swelling in her upper extremities, could raise her arms over her head, had a 5/5 grip and pinch, and had 5/5 motor strength in her upper and lower extremities. (*Id.* at 461, 463). Dr. Lee further reported that Plaintiff had a normal gait, did not require an assistive device for stability, and could go from standing to sitting and *vice versa* without assistance. (*Id.* at 463). Additionally, Plaintiff was seen at Kaiser Permanente in 2009 and 2010, and those medical records indicate that she had normal motor strength in all extremities, had normal gait, had never required surgery, and that her lower back pain responded to medication. (*Id.* at 488, 494, 496-97). Thus, there is "more than a scintilla" of evidence supporting the ALJ's finding that Plaintiff's medical records did not support additional limitations in the RFC, and the ALJ was not required to include additional limitations in the RFC. *See Stone*, 2013 WL 6017393, at *3; *Foote*, 67 F.3d at 1560.

### D. Dr. Kurl's Opinion

Lastly, Plaintiff argues that the ALJ erred in assessing Dr. Kurl's opinion. (Doc. 13 at 15-17). The ALJ did not specify the weight given to Dr. Kurl's findings of probably severe degenerative joint disease, decreased vision, and depression. (*Id.* at 15). Nor did the ALJ include arthralgia,[3] severe degenerative joint disease, or decreased vision in his findings. (*Id.*). Further, Plaintiff argues that the ALJ erred in rejecting Dr. Kurl's opinion that Plaintiff could not work simply because this opinion was on an issue reserved to the Commissioner. (*Id.* at 15-16). As to this opinion, the ALJ also did not recontact Dr. Kurl for clarification,[4] nor did the ALJ consider

---

[3] Arthralgia is joint pain.
[4] Plaintiff has waived any argument that the ALJ should have contacted Dr. Kurl, as she mentions this point only in passing. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 832

this opinion in relation to the medical record as a whole. (*Id.* at 16). Plaintiff also argues that the ALJ erred in finding Dr. Kurl's opinion inconsistent based on his finding that Plaintiff could perform activities of daily living, but could not work. (*Id.* at 16-17). Whether Plaintiff could work and whether she could perform activities of daily living are separate issues. (*Id.* at 17).

Generally, treating physicians' opinions are accorded more weight than those of non-treating physicians, and examining physicians' opinions are accorded more weight than those of non-examining physicians. 20 C.F.R. § 416.927(c)(1)-(2). Whether a claimant is disabled or unable to work is not a medical opinion, but is an issue reserved to the Commissioner. *Id.* § 416.927(d). Though such an opinion by a physician is not entitled to special weight, the ALJ should consider the opinion. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011). The ability to perform activities such as housework does not necessarily indicate that a claimant is able to work. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

"[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005).

Here, the ALJ's discussion of Plaintiff's symptoms and impairments and discussion of Dr. Kurl's opinion are sufficiently specific and detailed to allow the Court to determine whether the ALJ's decision is supported by substantial evidence. *See Winschel*, 631 F.3d at 1179. The ALJ specified that he was giving little weight to Dr. Kurl's opinion. (Tr. at 29). The ALJ was not required to refer specifically to each of Dr. Kurl's findings, particularly where the ALJ addressed the findings with which Plaintiff takes issue elsewhere in his opinion. *See Dyer*, 395 F.3d at 1211;

---

(11th Cir. 2011) (explaining that a claimant must make more than a passing reference to an issue to preserve the issue on appeal).

*Holt*, 921 F.2d at 1223.  Specifically, as to Dr. Kurl's assessment of "[l]ow back pain probably severe DJD," the ALJ noted that images of Plaintiff's lumbar spine showed only mild degenerative changes; she had received conservative care, such as pain medication for her lower back pain; and there was a lack of positive findings during her examinations.  (*See* Tr. at 27-28, 638).  As to Plaintiff's vision, as discussed above, the ALJ did not credit Plaintiff's subjective complaints—including those related to her vision—because her migraines were controlled by medication.  (*See id.* at 27-28).  As to Dr. Kurl's assessment of depression, the ALJ explained that he had considered Plaintiff's lack of formal mental health treatment and the state agency consultants' opinions that Plaintiff had no severe mental impairments.  (*See id.* at 29).  Thus, it is clear that the ALJ considered Plaintiff's "[l]ow back pain probably severe DJD," vision problems, and depression, and the ALJ was not required to refer to these findings when discussing Dr. Kurl's opinion.

Next, the ALJ was not required to include findings related to Plaintiff's alleged joint and lower back pain or vision problems because, as discussed throughout this Report and Recommendation, the ALJ correctly found that Plaintiff's subjective symptoms were not fully credible, as they were managed conservatively and controlled by medication.  *See Stone*, 2013 WL 6017393, at *3; (*see, e.g.*, Tr. at 396, 401, 493-94, 496-97).

Finally, even assuming *arguendo* that the ALJ did not sufficiently consider Dr. Kurl's opinion that Plaintiff could perform activities of daily living, but might not be able to work, any error was harmless.  As a treating physician, Dr. Saba's opinion was entitled to more weight than that of Dr. Kurl, who was not a treating physician.  *See* 20 C.F.R. § 416.927(c)(2).  The ALJ accorded Dr. Saba's opinion great weight, and there is no indication that further consideration of Dr. Kurl's opinion would cause the ALJ to contravene the social security regulations and give Dr. Kurl's opinion that Plaintiff might not be able to work more weight than Dr. Saba's opinion that

Plaintiff could work. (*See* Tr. at 29). Accordingly, even assuming *arguendo* that the ALJ erred, any error was harmless and remand is not warranted. *See Wright*, 153 F. App'x at 684.

## V. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be **AFFIRMED**.

**DONE AND ENTERED** in Ocala, Florida, on February 3, 2014.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

District Judge

All Counsel